IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

NADER ASGHARI-KAMRANI and
KAMRAN ASGHARI-KAMRANI

    Plaintiffs,

    v.　　　　　　　　　　　　　　　　CIVIL NO. 2:15cv478

UNITED SERVICES AUTOMOBILE
ASSOCIATION

    Defendant.

## ORDER

This is a suit for patent infringement under 35 U.S.C. § 271. First Am. Compl. ¶ 1, ECF No. 19. Plaintiffs Nader Asghari-Kamrani and Kamran Asghari-Kamrani ("Plaintiffs") have alleged that the United Services Automobile Association ("USAA" or "Defendant") has infringed several claims of United States Patent No. 8,266,432 ("the '432 patent"). Id. USAA has filed a Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 20. For the reasons set forth hereinafter, the Court **GRANTS** the Motion, **DISMISSES** Plaintiffs First Amended Complaint **WITHOUT PREJUDICE**, and **GRANTS** Plaintiffs **LEAVE TO AMEND** their complaint within twenty-one (21) days. ECF No. 20.

### I. BACKGROUND

#### A. PROCEDURAL HISTORY

On October 30, 2015, Plaintiffs filed their initial complaint for patent infringement pursuant to 35 U.S.C. § 271. ECF No. 1. On December 1, 2015, USAA filed a Motion to Dismiss for Failure to State a Claim. ECF No. 15. Before the Court heard argument on this Motion Plaintiffs filed an Amended Complaint on December 21, 2015. ECF 19. USAA then filed the

1

instant Motion to Dismiss for Failure to State a Claim on January 7, 2016. ECF No. 20. Plaintiffs filed their Opposition on January 21, 2016, and USSA filed its Reply to the Opposition on January 28, 2016. ECF Nos. 26, 28. On March 8, 2016, the Court held a hearing on the Motion to Dismiss. ECF No. 52. The same day USAA filed an answer asserting several counterclaims. ECF No. 44.

### B. PATENT-IN-SUIT

Plaintiffs allege that USAA infringes "*at least* claims 1-13, 16-42, and 42-55" of the Plaintiffs' patent, United States Patent No. 8,266,432 ("the '432 patent"). First Am. Compl. ¶ 1 (emphasis added). According to the Summary of the Invention, "[t]he invention relates to a system and method provided by a Central-Entity for centralized identification and authentication of users and their transactions to increase security in e-commerce." '432 patent 2:52–55, ECF No. 19-1, Ex. A. The patent identifies three entities that perform the patent's methods: (1) a "Central-Entity" which "centralizes user's personal and financial information in a secure environment in order to prevent the distribution of the user's information in e-commerce;" (2) a "user" which "represents both a typical person consuming goods and services as well as a business consuming goods and services, who needs to be identified in order to make online purchases or gain access to restricted web sites. The user registers at the Central-Entity to receive his digital identity, which is then provided to the External-Entity for identification;" and (3) an "External-Entity" which "is any party offering goods or services in e-commerce and needs to authenticate the users based on digital identity." '432 patent at Summary of Invention, 2:56–3:6.

Initially, the user signs-up at the Central-Entity and provides his "personal or financial information." Id. at 3:7–8. The Central-Entity gives the user a UserName and Password that he will utilize when interacting with the Central-Entity. Id. at 3:8–13. When requested by the user, the Central-Entity also gives the user a SecureCode, which is "dynamic, non-predictable and

time-dependent." Id. at 3:13–16. The user may then provide his UserName and SecureCode to the External-Entity. Id. at 3:19–21. The External-Entity then sends the UserName and SecureCode to the Central-Entity, which will validate the information and confirm the identity of the user and inform the External-Entity of the result. Id. at 3:21–26.

This process is described in Claim 1 of the patent, which is representative:

A method for authenticating a user during an electronic transaction between the user and an external-entity, the method comprising:

    receiving electronically a request for a dynamic code for the user by a computer associated with a central-entity during the transaction between the user and the external-entity;

    generating by the central-entity during the transaction a dynamic code for the user in response to the request, wherein the dynamic code is valid for a predefined time and becomes invalid after being used;

    providing by the computer associated with the central-entity said generated dynamic code to the user during the transaction;

    receiving electronically by the central-entity a request for authenticating the user from a computer associated with the external-entity based on a user-specific information and the dynamic code as a digital identity included in the request which said dynamic code was received by the user during the transaction and was provided to the external-entity by the user during the transaction; and

    authenticating by the central-entity the user and providing a result of the authenticating to the external-entity during the transaction if the digital identity is valid.

The dependent claims build on this basic framework. Independent claim 25 is an apparatus claim version of claim 1. Claim 25 requires that two computers perform the functions of the Central-Entity—one to generate a dynamic code and a second to validate it. Independent claim 48 is another method claim very similar to claim 1. It requires an alphanumeric dynamic code. Independent claim 52 is an apparatus claim version of claim 48 and again uses two computers to perform the functions of the Central-Entity. Critically, all independent and

3

dependent claims of the patent require a Central-Entity, a user, and an External-Entity. See '432 patent claims 1–55.

### C. Factual Allegations

At the outset of their complaint, Plaintiffs allege that Defendant has infringed "*at least* claims 1-13, 16-42, and 45-55 of the '432 patent." First Am. Compl. ¶ 10 (emphasis added). They allege that Defendant, USAA, infringes their patent through its website, http://www.usaa.com. Id. Plaintiffs allege that four specific features of Defendant's website infringe "at least claim 1 of the '432 patent." Id. ¶¶ 16, 21, 27, 28. Additionally, Plaintiffs add a catch-all allegation in which they claim that "[u]pon information and belief, USAA uses additionally login and authentication technology that infringes at least claim 1 of the '432 patent." Id. ¶ 29. Plaintiffs never explain how USAA's website infringes any claim of the patent other than claim 1.

The first feature of USSA's website that Plaintiffs allege infringes at least claim 1 of their patent is USAA's trademarked CyberCode® Text technology. Id. ¶p 14–16. This feature allows users of the website to further protect their accounts from unauthorized access. Id. ¶ 14. A user may elect to login to the website with CyberCode® Text rather than with a permanent PIN. Id. CyberCode® Text is a dynamic one-time use code that is sent by text message to the user by USAA when the user wants to login to USAA's website. Id. ¶ 14–15.

The second feature alleged to infringe at least claim 1 of patent is a method of authenticating users who have forgotten their Passwords or PINs. Id. ¶¶ 17–21. When a user has forgotten a Password or PIN, he may elect to be sent a one-time dynamic code through email or text message. Id. ¶ 18. The user may then use this code to reset his Password or PIN. Id.

The third feature alleged to infringe at least claim 1 of patent is a method of authenticating users who have attempted to login to the website from an "unknown or unrecognized computer

4

or device." Id. ¶¶ 22–27. When a user attempts to login from an unknown computer or device, USAA send him a temporary, dynamic code by text message or email. Id. ¶ 23. The user then uses that code to login. Id. ¶ 24.

The fourth feature alleged to infringe at least claim 1 of patent is a service USAA calls "Quick Logon." Id. ¶¶ 28. Quick Logon allows a user to use his PIN in conjunction with a dynamic code to logon to the website. Id.

## II. STANDARD OF REVIEW

All Patent complaints filed after December 1, 2015 are subject to the normal pleading standards of Federal Rule of Civil Procedure 8(a). Order Amending Fed.R.Civ.P. (U.S. Apr. 29, 2010). The function of a motion to dismiss is to test "the sufficiency of a complaint." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). A court must consider "the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive such a motion, the complaint must allege facts sufficient 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" Haley, 738 F.3d at 116. When reviewing the legal sufficiency of a complaint, a court must accept "all well-pleaded allegations in the plaintiff's complaint as true" and draw "all reasonable factual inferences from those facts in the plaintiff's favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Legal conclusions, on the other hand, are not entitled to the assumption of truth if they are not supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

In its Motion to Dismiss, USAA raises two distinct grounds for this Court to dismiss the

complaint pursuant to Fed. R. Civ. P. 12(b)(6): (1) that Plaintiffs have failed to plead enough facts to give USAA a "full and fair opportunity to defend itself," and (2) that "Plaintiffs' patent is facially invalid under 35 U.S.C. § 101." Mem. in Supp. of Mot. to Dismiss, ECF No. 21 at 1. Because the Court holds that Plaintiffs have failed to plead with sufficient particularity, it grants the motion to dismiss. It does not reach Defendant's second ground for dismissal.

Plaintiff's complaint is deficient in several respects. First, Plaintiffs fail to specify which features of USAA's website correspond to the Central- and External-Entities that their patent identifies. Every claim of the patent requires these entities. Without knowing what features of their website correspond to these entities, USAA cannot adequately respond to Plaintiffs' allegations of infringement.

Second, Plaintiffs fail to identify with sufficient particularity how each allegedly infringing feature of USAA's website infringes the patent. Plaintiffs' catchall allegation is obviously deficient: with this allegation Plaintiffs have not even identified a feature of USAA's website that infringes. Plaintiffs do identify four specific features of the website that infringe: (1) CyberCode® Text; (2) the one-time use dynamic code for users who forget their PIN or passwords; (3) the one-time use dynamic code for users who login in from an unfamiliar computer; and (4) Quick Logon. Contrary to Defendant's contention, Plaintiffs have adequately identified these features. However, there is no information in the complaint that elucidates how these features infringe the patent. What all these features have in common is the use of a one-time dynamic code. However, Plaintiffs' patent is not for a one-time use dynamic code nor do they have any pretentions to having invented a one-time use dynamic code. In their patent Plaintiffs identify as prior art a patent that utilizes a one-time use dynamic code. '432 patent at Description of Related Art, 1:41–46 (identifying U.S. Pat No. 5,732,137, which utilizes a system

and method that "provides for remote authentication using a one-time password scheme . . . ."). As discussed above, every one of the patent's claims contain limitations in addition to the use of a one-time code. Doing no more than identifying features of USAA's website that use a one-time use code does not describe with particularity how USAA's website infringes Plaintiffs' patent.

Lastly, Plaintiffs fail to identify how USAA's website infringes each of the claims they allege have been infringed. Although Plaintiffs identified several infringed claims at the outset of their complaint, they only provide details—themselves insufficient—about how the features of the website infringe claim 1. Plaintiffs must detail how each claim is infringed.

Plaintiffs have already filed an amended complaint. However, they filed this amended complaint, by right, before the Court ruled on the first Motion to Dismiss. Accordingly, the Court will allow Plaintiffs to file another amended complaint so that they may plead their allegations of infringement with sufficient factual particularity.

IV. **CONCLUSION**

For the reasons set forth above, **GRANTS** the Motion to Dismiss, **DISMISSES** Plaintiffs First Amended Complaint **WITHOUT PREJUDICE**, and **GRANTS** Plaintiffs **LEAVE TO AMEND** their complaint within twenty-one (21) days so that they may plead with more particularly how Defendant infringes their patent. ECF No. 20.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
March 22, 2016