**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| NADER ASGHARI-KAMRANI and KAMRAN ASGHARI-KAMRANI<br><br>Plaintiffs,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION<br><br>Defendant. | Civ. Act. No. 2:15-cv-478 RGD-RJK |

**RENEWED MEMORANDUM IN SUPPORT OF USAA'S MOTION FOR ATTORNEYS' FEES**

Ahmed J. Davis (Va. Bar # 43982)
adavis@fr.com
**FISH & RICHARDSON P.C.**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Phone: (202) 783-5070
Fax: (202) 783-2331

Michael T. Zoppo (*Pro hac vice*)
zoppo@fr.com
**FISH & RICHARDSON, P.C.**
601 Lexington Avenue, 52nd Floor
New York, New York 10022
Tel. (212) 765-5070
Fax (212) 258-2291

Matthew C. Berntsen (*Pro hac vice*)
berntsen@fr.com
David Kuznick (*Pro hac vice*)
kuznick@fr.com
Grant Rice (*Pro hac vice*)
rice@fr.com

**FISH & RICHARDSON, P.C.**
One Marina Park Drive
Boston, MA 02210-1878
Tel. 617-542-5070
Fax (617) 542-8906

Counsel for Defendant
UNITED SERVICES AUTOMOBILE ASSOCIATION

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

A. Attorneys' Fees Under Section 285 of the Patent Act Are Highly Permissive ..... 2

B. Attorneys' Fees Under 28 U.S.C. § 1927 ..... 5

C. Attorneys' Fees Under the Federal Rules of Civil Procedure ..... 5

D. Attorneys' Fees Under the Court's Inherent Power ..... 6

III. PLAINTIFFS' SANCTIONABLE CONDUCT ..... 7

A. Plaintiffs had No Factual or Legal Basis to File Their Multiple Complaints ..... 7

B. Plaintiffs Spoliated Their Electronic Mail ..... 7

C. Plaintiffs' Counsel Engaged in Substantial Discovery Misconduct to Prevent USAA from Accessing Relevant Information ..... 9

1. Mr. Nienstadt Represented All Relevant Parties, Including Third Party Fact Witnesses, in an Effort to Suppress Evidence ..... 9

2. Plaintiffs' Obstructionist Conduct Necessitated Avoidable Discovery Motions by USAA ..... 10

3. Plaintiffs' Discovery Conduct Necessitated a Trial on the Merits ..... 11

D. Plaintiffs' Numerous Frivolous Motions ..... 12

E. Plaintiffs' Exceptional Behavior Continued Through Trial ..... 13

F. Mr. Nienstadt's Conduct Warrants Sanctions to Deter Similar Conduct ..... 14

G. Plaintiffs' Exceptional Conduct Continues Post-Trial ..... 17

IV. SANCTIONS ARE APPROPRIATE HERE ..... 18

A. This Case is Exceptional Under 35 U.S.C. § 285 ....................................................18

B. Mr. Nienstadt Unreasonably and Vexatiously Multiplied the Proceedings Within the Meaning of 28 U.S.C. § 1927.......................................20

C. Sanctions Are Appropriate for Plaintiffs' and Their Counsel's Failure to Comply with the Federal Rules of Civil Procedure............................21

D. Sanctions against Mr. Nienstadt Are Appropriate for Violating the Virginia State Bar Rules of Professional Conduct........................................22

E. Sanctions Are Appropriate Under the Court's Inherent Authority ..........................................................................................................24

F. Mr. Nienstadt's Inexperience as a Trial Lawyer is No Excuse...........................24

V. PLAINTIFFS AND THEIR COUNSEL SHOULD BE ORDERED TO PAY USAA'S FEES JOINTLY AND SEVERALLY ...................................................25

VI. CONCLUSION..........................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Transformer Co. v. Levinson*,
1986 U.S. Dist. LEXIS 16021 (N.D. Ill. Dec. 23, 1986) ........ 26

*Am. Standard, Inc. v. York Int'l Corp.*,
244 F. Supp. 2d 990 (W.D. Wis. 2002) ........ 4

*Brooks Furniture Mfg., Inc. Dutailier Intern., Inc.*,
393 F.3d 1378, 1381 (Fed. Cir. 2005) ........ 18

*Carefirst of Md., Inc. v. First Care, P.C.*,
422 F. Supp. 2d. 592 (4th Cir. 2006) ........ 6

*Chambers v. NASCO*,
501 U.S. 32 (1991) ........ 6

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
2014 WL 6978644 (N.D. Ill. Dec. 10, 2014) ........ 4

*Dropbox, Inc. v. Thru Inc.*,
2017 WL 914273 (N.D. Cal. Mar. 8, 2017) ........ 5

*eDekka LLC v. 3balls.com, Inc.*,
2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) ........ 4

*Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*,
2017 WL 467839 (N.D. Cal. Feb. 2, 2017) ........ 5

*F. D. Rich Co. v. U. S. for Use of Indus. Lumber Co.*,
417 U.S. 116 (1974) ........ 24

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
134 S. Ct. 1744 (2014) ........ 3, 4, 14, 18

*Iris Connex, LLC v. Dell, Inc.*,
2017 WL 365634 (E.D. Tex. Jan. 25, 2017) ........ 4

*Kaehni v. S. S. Kresge Co.*,
1974 U.S. Dist. LEXIS 8485 (D. Md. 1974) ........ 26

*Large Audience Display Sys., LLC v. Tennman Prods.*, LLC,
2017 WL 1528774 (C.D. Cal. Apr. 10, 2017) ........ 5

*Macias v. Target Stores Inc.*,
188 F. App'x 210 (4th Cir. 2006) ....................................................................................6

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012)...........................................................................................4

*Mosel Vitelic Corp. v. Micron Tech., Inc.*,
162 F. Supp. 2d 307 (D. Del. 2000)..................................................................................27

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
143 S. Ct. 1749, 1756 (2014)...................................................................................... *passim*

*Oplus Techs., Ltd. v. Vizio, Inc.*,
782 F.3d 1371 (Fed. Cir. 2015).....................................................................................3, 20

*Par Pharm., Inc. v. Luitpold Pharm., Inc.*,
2017 WL 1479418 (D.N.J. Apr. 24, 2017) ........................................................................4

*Phonometrics, Inc. v. Westin Hotel Co.*,
350 F.3d 1242 (Fed. Cir. 2003).........................................................................................27

*Price v. First Star Mortgage*,
2006 WL 2381921 (E.D. Va. Aug. 15, 2006)..................................................................1, 6

*Ralston Purina Co. v. McFarland*,
550 F.2d 967 (4th Cir. 1977) ............................................................................................10

*Roadway Exp., Inc. v. Piper*,
447 U.S. 752 (1980)............................................................................................................7

*Segan LLC v. Zynga Inc.*,
131 F. Supp. 3d 956, 965 (N.D. Cal. 2015) .....................................................................26

*SSL Servs., LLC v. Citrix Sys.*,
769 F.3d 1073 (Fed. Cir. 2014).........................................................................................18

*Stradtman v. Republic Servs., Inc.*,
121 F. Supp. 3d 578 (E.D. Va. 2015) ................................................................................5

*Stretchline Intellectual Props. Ltd. v. H&M*,
2015 WL 5175196 (E.D. Va. Sept. 3, 2015).......................................................................2

*Vir2us, Inc. v. Invincea, Inc.*,
2017 WL 385044 (E.D. Va. Jan. 27, 2017) ......................................................5, 6, 21, 22

**Statutes**

28 U.S.C § 1927 ........ *passim*

35 U.S.C. § 285 ........ *passim*

**Other Authorities**

Darin Jones, *A Shifting Landscape for Shifting Fees: Attorney-Fee Awards in Patent Suits After Octane and Highmark,* 90 WASH. L. REV., 505, 533-34 (2015) ........ 3

FED. R. CIV. P. 26(f)(2), (3) ........ 8

FED. R. CIV. P. 37 ........ 1, 6, 21

Virginia State Bar Rules of Professional Conduct ........ 22, 23, 24

WRIGHT & MILLER, Federal Practice and Procedure: Civil § 2113 at 419, n.22 (1970)) ........ 10

USAA hereby renews its Motion for Attorneys' Fees under 35 U.S.C. § 285, 28 U.S.C § 1927, FED. R. CIV. P. 37 and 54(d)(2), and the Court's inherent power.[1] Dkt. 151.

## I. INTRODUCTION

Weeks after the trial in this matter, two events that transpired during the trial continue to stand in stark relief. *First*, at the end of the initial day of trial, after the Court plainly instructed a lawyer representing Plaintiffs to ask only one more question, she knowingly and willfully ignored the Court's instruction. She was held in contempt. *Second*, another lawyer representing the Plaintiffs attempted to introduce into evidence certain ethical rules for the New York City Bar—to prove that a California lawyer defending depositions in the District of Columbia in a case being tried in Norfolk, had not breached his ethical duty. The Court, clearly disturbed, admonished the lawyer: "*don't ever do that*." Yet it was the action of a third lawyer for Plaintiffs that led the Court to lament the state of the patent bar; to find that there was a conspiracy afoot; to portend that disqualification of that lawyer would have been appropriate; and to remark that it had not seen anything like this case in 60 years. And unsurprisingly—in fact, exactly as USAA foretold in its motion to empanel an advisory jury—Plaintiffs played their bias card, asking the Court to recuse itself mid-trial. It has now filed a mandamus petition on that same issue, calling this Court biased, bigoted, and senile.

The sad truth is that what happened at trial, in front of the Court, was just exemplary of what had transpired throughout this case outside of the Court's presence. Plaintiffs and their counsel obstructed discovery, took unreasonable and unjustifiable positions, filed spurious and duplicative motions, and generally litigated this case in a way that one would expect when the patent already has been invalidated and the lawyers have the case on a contingency fee. That the

[1] USAA incorporates by reference its prior briefing on attorneys' fees. Dkt. 152, 178.

Court ultimately granted Plaintiffs' Rule 52(c) motion does not negate this behavior, or undermine USAA's quest for its reasonable attorneys' fees. To the contrary, this Court granted the 52(c) motion largely based on its conclusion that the most reasonable inference to be drawn from the evidence relates to the ineptitude of Plaintiffs' various counsel.

But whether from Counsel's misfeasance or malfeasance, one thing is certain: this case is exceptional because it stands out from all the rest in the way in which it was litigated. Plaintiffs' and their counsel's conduct has far surpassed the mere preponderance of evidence required to render this case exceptional—and that means an award of attorneys' fees is mandated and proper.

## II. LEGAL STANDARD

### A. Attorneys' Fees Under Section 285 of the Patent Act Are Highly Permissive

Under the Patent Act, district courts are authorized to "award reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285. In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court explained that an exceptional case is "one that stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated." 134 S. Ct. 1749, 1756 (2014). District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* The burden of proof under *Octane Fitness* is not high; a mere preponderance of the evidence is sufficient to prove exceptionality, *id.* at 1758; *see also Stretchline Intellectual Props. Ltd. v. H&M*, 2015 WL 5175196 at *5-6 (E.D. Va. Sept. 3, 2015) (Jackson, J.) (quoting *DietGoal Innovs. LLC v. Chipotle Mexican Grill, Inc.*, 2015 WL 1284669

at *1 (E.D. Tex. Mar. 20, 2015) (Bryson, C.J.)).[2] The Court's determination under § 285 is reviewed for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1747 (2014).

In the wake of *Octane Fitness,* the standard for awarding attorneys' fees in patent cases is uniquely permissive and, as commentators have recognized, represents a sea change from historical practice:

> In American civil litigation generally, awards of attorney fees are rare. Indeed, requiring each party to pay its own fees in most instances is a 'bedrock principle' of litigation in this country. But in *Octane* and *Highmark*, the Supreme Court undeniably held that district courts have broad authority to award attorney fees in patent suits. In doing so, it signaled that § 285 should not lie dormant: the statute is meant to be used. But, because the change is so new, and because most district court judges see relatively few patent cases, it should not be surprising that individual judges may not fully understand how § 285 applies in the complex world of patent litigation. Judges may not, in fact, even be aware of the statute at all. It is up to the parties seeking fees, therefore, to inform courts about their newly broadened powers under *Octane* and *Highmark*, and to urge them to exercise those powers.

Darin Jones, *A Shifting Landscape for Shifting Fees: Attorney-Fee Awards in Patent Suits After* Octane *and* Highmark, 90 WASH. L. REV. 505, 533-34 (2015). Moreover, the Federal Circuit has held that *Octane Fitness* has so altered the landscape that *denying* fees under § 285 where a district court has found an attorney's conduct to be "'inappropriate,' 'unprofessional,' 'vexatious,' and 'harassing,'" can amount to reversible error. *Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374 (Fed. Cir. 2015).

Factors that are considered in evaluating whether the totality of circumstances warrants an award of fees include—but are not limited to—"frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*,

[2] Circuit Judge William C. Bryson, of the Federal Circuit Court of Appeals, sitting by designation.

134 S. Ct. at 1756 n.6. Importantly here, the Supreme Court has explained that attorneys' fees may be awarded under § 285 *for unreasonable conduct that is not independently sanctionable*. *Id*. at 1751 ("A district court may award fees in the rare case in which a party's unreasonable, though not independently sanctionable, conduct is so 'exceptional' as to justify an award."). Indeed, both before and after *Octane Fitness*, courts have sanctioned plaintiffs under § 285 for a variety of reasons:

- Bringing and maintaining suit on a patent that is directed to unpatentable subject matter. *E.g.*, *eDekka LLC v. 3balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) ("no reasonable litigant could have reasonably expected success on the merits when defending against the … § 101 motions filed in this case").

- Bad faith litigation conduct and unsupportable infringement and claim construction positions. *Iris Connex, LLC v. Dell, Inc.*, No. 2:15-CV-1915-JRG, 2017 WL 365634, at *14 (E.D. Tex. Jan. 25, 2017) (sanctioning plaintiff and its principal under § 285 and the court's inherent power, as well as lead counsel individually under Rule 11 and collecting cases regarding who may be sanctioned under § 285).

- Bringing and maintaining suit based on a frivolous infringement position, including where that position required a claim construction at odds with the specification of the patent-in-suit. *E.g.*, *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) ("Because the specification and prosecution history clearly refute [the patentee's] proposed claim construction, the district court did not err in finding that [the patentee's] infringement claims were objectively baseless."); *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, No. 07 C 623, 2014 WL 6978644, at *6 (N.D. Ill. Dec. 10, 2014) (sanctioning patentee for advocating infringement position that a single accused instrumentality satisfied claims requiring two independent exchanges).

- Bad-faith and dilatory conduct throughout a litigation. *E.g.*, *Am. Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990, 996 (W.D. Wis. 2002) *appeal dismissed* 70 F. App'x 570 ("An exceptional case finding is warranted because plaintiffs' claims under the '560 patent were unjustified and vexatious and because plaintiffs' tactics in discovery were dilatory, misleading and in bad faith.").

- Bringing and maintaining suit based on a frivolous infringement position and for improper attempts to use discovery to police the defendants' future conduct. *Par Pharm., Inc. v. Luitpold Pharm., Inc.*, No. CV1602290WHWCLW, 2017 WL 1479418, at *4 (D.N.J. Apr. 24, 2017).

- Finding exceptional conduct by Plaintiff and their counsel at each stage of the litigation, including making arguments before the PTO that were plainly contradicted on the face of the patents. *Large Audience Display Sys., LLC v. Tennman Prods.*, LLC, No. CV 11-03398-R, 2017 WL 1528774, at *1-*2 (C.D. Cal. Apr. 10, 2017).

- *See also* courts granting fees under the *Octane* standard in related trademark litigations: *Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-EMC, 2017 WL 914273, at *1, *3-*5 (N.D. Cal. Mar. 8, 2017) (finding the case exceptional for bringing a substantively meritless case, filing a frivolous motion to dismiss, and engaging in unreasonable discovery conduct); *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, No. C 16-03081 WHA, 2017 WL 467839, at *2-*3 (N.D. Cal. Feb. 2, 2017) (finding the case exceptional based on, *inter alia*, "plaintiff's unreasonable conduct, including misrepresentations and misleading statements to the Court" and admonishing plaintiff's for "exaggerating damages in the complaint while downplaying liability for attorney's fees").

**B. Attorneys' Fees Under 28 U.S.C. § 1927**

Section 1927 provides for attorneys' fees where an attorney "multiplies the proceedings in any case unreasonably and vexatiously." This inquiry considers whether Plaintiffs' counsel engaged in objective bad faith conduct, which does not require malice or ill will; ***"reckless indifference to the law will qualify."*** *See Stradtman v. Republic Servs., Inc.*, 121 F. Supp. 3d 578, 582 (E.D. Va. 2015) (*quoting Collins v. Dollar Tree Stores, Inc.*, No. 2:09CV486, 2010 WL 9499078, at *3 (E.D. Va. May 28, 2010)) (emphasis added). "'If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.'" *Id.*

**C. Attorneys' Fees Under the Federal Rules of Civil Procedure**

"[T]he district court has broad discretion in determining the appropriate sanction for a party's noncompliance with a discovery request." *Vir2us, Inc. v. Invincea, Inc.*, No. 2:15CV162, 2017 WL 385044, at *1 (E.D. Va. Jan. 27, 2017) (Morgan, J.) (quoting *Majestic Distilling Co., Inc. v. Stanley Stawski Distrib. Co.*, 205 F.3d 1333, *4 (4th Cir. 2000) (unpublished table decision)). "Determining whether discovery sanctions are appropriate requires a three-step analysis of (1) whether a party violated a discovery order or Federal Rule of Civil Procedure; (2)

whether the violation was 'harmless' or 'substantially justified;' and (3) which sanction is appropriate for the violation." *Id.* (*citing Samsung Elecs. Co., Ltd. v. Nvidia Corp.*, 314 F.R.D. 190, 195–96 (E.D. Va. 2016)).

Federal Rule 37 provides that where a litigant complies with their discovery obligations only after forcing their opponent to engage in motion practice, "the court must . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). Further, where "discoverable documents were not timely produced—including some which contained admissible evidence and may have contained evidence or information that would lead to additional discoverable evidence," sanctions are appropriate. *Vir2us*, 2017 WL 385044, at *8-*9 ("What occurred is, at bottom, sanctionable conduct for which Defendant and its principal counsel are both responsible.").

**D. Attorneys' Fees Under the Court's Inherent Power**

Courts also have inherent power to impose sanctions on a party for bad faith conduct that offends the legal process. *Chambers v. NASCO*, 501 U.S. 32, 46 (1991) (inherent power is not displaced by statutory sanctions, because where "each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses"). Such sanctions may include assessing fees and costs, excluding evidence or defenses, or even the dismissal of a party's claims. *See*, *e.g.*, *Carefirst of Md., Inc. v. First Care, P.C.*, 422 F. Supp. 2d. 592, 597-600 (4th Cir. 2006); *Macias v. Target Stores Inc.*, 188 F. App'x 210, 211-13 (4th Cir. 2006); *Price v. First Star Mortgage*, No. 2:03cv568, 2006 WL 2381921, at *3 (E.D. Va. Aug. 15, 2006), *aff'd*, 2008 WL 4542844 (4th Cir. Oct. 9, 2008). "The bad-faith exception for the award of attorneys' fees is not restricted to cases where the action is filed in bad faith. [B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the

litigation." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980) (citation and internal quotation marks omitted, alteration in original).

## III. PLAINTIFFS' SANCTIONABLE CONDUCT

### A. Plaintiffs had No Factual or Legal Basis to File Their Multiple Complaints

In our original Motion for Attorneys' Fees, USAA explained how Plaintiffs (1) should have known that they filed suit on an invalid patent, (2) failed to put USAA on notice of their infringement allegations, and (3) sought claim constructions that were unreasonable and contradicted positions Plaintiffs took before the Patent Trial and Appeal Board. Dkt. 152 § III.A; Dkt. 178 § II.A. USAA incorporates its prior briefing herein by reference, and notes that Plaintiffs do not even dispute that they failed to put USAA on notice of their infringement allegations. *See generally* Dkt. 176. Indeed, Plaintiffs ultimately identified an allegedly infringing instrumentality that does not actually exist. *See* Dkt. 87-3.

### B. Plaintiffs Spoliated Their Electronic Mail

Plaintiffs' discovery misconduct began before this litigation. Plaintiffs first contacted USAA regarding the '432 Patent on or about September 9, 2014. *See* Trial Tr. at 222:7-23; *see also* 309:19-24. Allegedly, about a year after forming their litigation plans and right before filing this suit, Plaintiffs lost access to their email relevant to this case. Ex. 2, Jan. 17, 2017, Resp. to Interrog. No. 15. It was not until after USAA apprised Plaintiffs of the priority issues in this case that they realized that the emails associated with the account used to communicate with their patent counsel had gone missing. *Id.* Compounding this misconduct, Plaintiffs did not institute a litigation hold until well ***after*** this suit began. *See* Trial Tr. at 339:14-340:11. As a result of Plaintiffs' spoliation, USAA was denied discovery into Plaintiffs' correspondence related to the prosecution of the patent-in-suit.

Plaintiffs' explanation—which amounts to nothing more than their defense theme of "we made a mistake"—is implausible for two reasons. First, it is inconsistent with their technical pedigrees. *See* Trial Tr. at 227:18-21; 409:7-16; 609:20-610:9; 726:18-20. Second, rather than be forthright with USAA and the Court, ***Plaintiffs hid their loss of email for months.*** *See* Trial Tr. at 305:1-8; 341:10-18; Dkt. 228 at 16-17.

As to the first issue, it is entirely implausible that two computer scientists—one with a masters' degree in computer science—lost years of stored email in the joint account they used for their patent work and did not notice for almost eight months. *See* Dkt. 325-42, Rubin Report § VIII; Trial Tr. at 409:7-8; 662:14-663:7. What makes the loss of their email incredible is that Plaintiff Nader Asghari-Kamrani's full-time job was to work on his inventions and to manage his patents. *See* Trial Tr. 226:8-227:8; 364:22-365:23. As to the second issue, Plaintiffs concealed the fact that they had lost emails until they were forced to rely on it as a defense to USAA's motion to compel those emails' production. *See* Dkt. 228 at 16-17. Indeed, even after they finally admitted to having lost their old emails, Plaintiffs defended hiding the fact by alleging that "[t]o the knowledge of Plaintiffs' counsel, the [fact that emails were lost] is not responsive to any of USAA's previous discovery requests." Ex. 2, Jan. 17, 2017 Resp. to Interrog. No. 15. Not so. Compare *id. with* Ex. 3, March 8, 2016 Req. for Prod. at Instruction No. 1 (calling for identification of documents no longer in Plaintiffs' control) and Req. No. 7 (calling for documents related to the asserted patent). The Federal Rules required Plaintiffs to advise USAA of "any issues about preserving discoverable information" and report on "any issues about disclosure, discovery, or preservation of electronically stored information." FED. R. CIV. P. 26(f)(2), (3).

### C. Plaintiffs' Counsel Engaged in Substantial Discovery Misconduct to Prevent USAA from Accessing Relevant Information

#### 1. Mr. Nienstadt Represented All Relevant Parties, Including Third Party Fact Witnesses, in an Effort to Suppress Evidence

USAA's counterclaim of inequitable conduct was rooted in its early recognition that the application leading to '432 Patent contained facially false claims of priority necessary for its issuance. After being notified of this infirmity, Plaintiffs and their agents took numerous, highly unusual steps to revise the priority claims. *See* Trial Tr. at 108:22-109:14; 414:5-9; 1039:17. When USAA sought documents and depositions from the actors involved in making these revisions—which were done in direct response to USAA's notice (*see* Trial Tr. 382:2-383:3)—USAA learned that Plaintiffs' litigation counsel would be representing all third parties engaged in these highly suspicious acts.

As has become clear to USAA and this Court, Mr. Nienstadt's insistence on representing third parties was not borne out of benevolence, but rather a plan to silence all parties with information that might hurt his chances of winning this case—and eventually getting a cut of any damages award. *See* Trial Tr. at 529:19-530:10; 571:2-25. Indeed, the Court expressly found that Mr. Nienstadt was "exercising the law trying to keep witnesses from testifying . . . [providing] sufficient enough evidence to pose a conspiracy." Trial Tr. at 529:24-530:17; *see also id.* at 941:4-19 ("[I]t was designed, purely and simply, to prevent the disclosure of evidence which they felt obviously would be detrimental to the particular case.").

Throughout every deposition, Mr. Nienstadt demonstrated a purposeful subversion of the rules of civil procedure and evidence to suppress the testimony of each witness. *See, e.g.* Trial Tr. at 97:14-98:14. USAA's depositions were improperly interrupted by baseless objections of privilege or work product (*see, e.g.*, Dkt. 325-19, Cao Depo. at 81:1-25), that testimony required a "legal opinion" even though lawyers were being deposed (*see, e.g.*, Dkt. 325-24, Kim Depo. at

216:10-15; 262:19-264:7), and relevance (*see, e.g.* Dkt. 325-20, Fortkort Depo. at 46:9-16; 50:6-19, Dkt. 325-10, Tadayon Depo. at 72:10-22; 74:21-75:9; Dkt. 325-24, Kim Depo at 59:9-22) (among others). Plaintiffs' counsel even went so far as to instruct witnesses not to answer based on objections of relevance. *Id.*; *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) ("'Counsel for party had no right to impose silence or instruct witnesses not to answer and if he believed questions to be without scope of orders he should have done nothing more than state his objections.'") (quoting WRIGHT & MILLER, Federal Practice and Procedure: Civil § 2113 at 419, n.22 (1970)).[3]

### 2. Plaintiffs' Obstructionist Conduct Necessitated Avoidable Discovery Motions by USAA

Plaintiffs' counsel stonewalled nearly every attempt by USAA to obtain discoverable information. As a result, USAA was forced to file numerous motions to compel Plaintiffs to comply with their discovery obligations. USAA substantially prevailed on each of these discovery motions. *See* Dkts. 119, 260, 292, 296.[4]

Plaintiffs' conduct went beyond their unwillingness to engage in discovery by plainly disregarding the Court's directives at each possible turn. The Court ruled, in no uncertain terms, that Mr. Kim's post-issuance conduct could have resulted in a finding of inequitable conduct. *See* Dkt. 224, 225, and 269. Only after Mr. Kim was finally compelled to sit for deposition did

---

[3] In response to Mr. Nienstadt's deposition and discovery conduct, USAA held each deposition open. While USAA did not seek to compel these third-party witnesses to sit for deposition a second time on the eve of trial, it notes that Plaintiffs' counsel uniformly objected to leaving the depositions open. *See, e.g.*, Dkt. 325-24 at 239:6-13.

[4] During trial, Plaintiffs falsely claimed that USAA's motion to compel Plaintiffs' privilege log was denied. First, Plaintiffs did not produce a privilege log until after USAA filed its motion. *See* Dkt. 199 at 4 (privilege log served on same day as Plaintiffs' opposition brief). Second, although Magistrate Judge Leonard ruled that Plaintiffs' "categorical" privilege log was sufficient, Magistrate Judge Krask ultimately disagreed, compelling Plaintiffs to provide a detailed privilege log. *See* Dkt. 284.

USAA learn that another attorney at his firm, Mr. Lee, actually "discovered" the omitted claim of priority that formed the basis for Mr. Kim's filings. Because of Plaintiffs' conduct, USAA learned this fact only a month before the close of discovery. USAA sought Mr. Lee's deposition or in the alternative agreement that Mr. Lee would not testify at trial but, incredibly, Plaintiffs disputed that USAA was entitled to Mr. Lee's deposition yet reserved their right to call him at trial. *See generally* Dkt. 299. USAA was forced to file, and prevail on, another unnecessary discovery motion. *See* Dkt. 316 (order granting USAA's motion).

**3. Plaintiffs' Discovery Conduct Necessitated a Trial on the Merits**

Despite the Court denying Plaintiffs' Motion to Dismiss, Mr. Nienstadt consistently refused discovery based solely on his unilateral and self-interested conclusion that USAA's claim was frivolous. *E.g.*, Ex. 4, Nienstadt Feb. 10, 2016 letter to Zoppo (accusing USAA of "attempting to manufacture a fake 'inequitable conduct' issue in order to harass Plaintiffs and deprive them of counsel of their choice"). Prior to trial, Plaintiffs filed a Motion to Dismiss, a Motion to Reconsider the denial of their Motion to Dismiss, and a Motion for Summary Judgment. *All were denied*. *See* Dkt. 204, 226, and 305. Even at trial, ***sitting in the witness stand***, Mr. Nienstadt refused to accept that USAA's claim was anything but "frivolous." Trial Tr. at 575:6-20, 577:24-578:18; 586:6-9; 590:17-21. The Court explicitly disagreed. *See id.* at 1040:4-8.

But the root of Mr. Nienstadt's confidence in his (self-interested) analysis of USAA's claims was a litigation strategy designed to suppress unfavorable evidence. *See* Trial Tr. at 941:4-19 ("[I]t was designed, purely and simply, to prevent the disclosure of evidence which they felt obviously would be detrimental to the particular case."). It was this suppression of evidence that necessitated a trial on the merits because both parties were precluded from establishing an indisputable evidentiary record for the Court to rule absent a trial. *See* Trial Tr. at

940:2-941:19 ("If it hadn't been for [Mr. Nienstadt's conduct], we probably wouldn't even be trying this case.").

### D. Plaintiffs' Numerous Frivolous Motions

Rather than defend themselves on the merits, Plaintiffs wasted USAA's and the Court's time and resources with frivolous motions. After this case originally was transferred *sua sponte* from Alexandria (where it was filed) to Norfolk, for example, Plaintiffs moved for intradistrict transfer *back* to Alexandria. *See* Dkt. 31. Plaintiffs' counsel also filed two motions for sanctions against USAA, both of which were denied. *See* Dkt. 128, 271. Throughout this litigation Plaintiffs have unreasonably refused to acknowledge that USAA pled a legitimate claim of inequitable conduct. Plaintiffs' defiance of the Court's directives were increasingly exceptional—culminating in a wasteful Motion for Summary Judgment that was filed just over a month prior to trial and which the Court denied with less than one page of analysis. *See* Dkt. 358 at 3; *see also* Dkt. 269 (Denying Motion for Reconsideration).

Plaintiffs also filed numerous motions seeking to prevent key witnesses—Mr. Nienstadt, Mr. Kim, and Mr. Fortkort—from testifying. *See* Dkt. 212, 226, 311, 318, and 326. Plaintiffs first sought to preclude USAA from taking Mr. Nienstadt and Mr. Kim's depositions. *See* Dkt. 212; *see also* Dkt. 226. As the Court explained, their knowledge "may prove crucial to demonstrating any intent to engage in a pattern of inequitable conduct before the PTO." Dkt. 224 at 12. Incredibly, Plaintiffs moved to preclude Mr. Nienstadt from testifying at trial. *See* Dkt. 311. USAA was again forced to oppose a baseless motion, which was ultimately denied. *See* Trial Tr. at 529:19-530:17. Plaintiffs also sought to quash the trial subpoenas of Mr. Kim and

Mr. Fortkort based upon a supposed "undue burden" testifying would create.[5] Both motions were also denied. Beyond the waste that went into opposing these motions, what is truly exceptional is that Plaintiffs moved to quash every third party trial subpoena to a fact witness that USAA served. Thus, even at trial, Plaintiffs were improperly trying to suppress evidence. *See, e.g.*, Trial Tr. at 572:10-15.

### E. Plaintiffs' Exceptional Behavior Continued Through Trial

Plaintiffs' counsel's conduct during discovery was not an isolated example of overzealous advocacy but rather a consistent disregard for the Court's authority, which continued through trial. Such exceptional behavior included Ms. Chen ignoring the Court in an attempt to get in a final question to elicit hearsay from Mr. Kim. While the Court sanctioned Ms. Chen for this behavior, her response was telling: "Happy to pay." Trial Tr. at 212:6. Plaintiffs' counsel thus had no qualms defying the Court so long as they got their way. This exceptional behavior continued when co-counsel attempted to defend Mr. Nienstadt's unethical conduct by submitting an opinion from the Association of the Bar of the ***City of New York*** Committee on Professional Ethics as an exhibit. *See* Trial Tr. at 596:4-597:23; 615:4-616:25 ("[Mr. Nienstadt] doesn't want to go by Virginia ethics, he wants to go by New York City's ethics."). After USAA elicited testimony that suggested—and the Court then confirmed—that Mr. Nienstadt is not even admitted to practice in New York, the Court struck this evidence. *See* Trial Tr. at 616:16-617:14.

[5] Plaintiffs also moved to limit Mr. Kim's testimony to the first day of trial. USAA notes that while it is not unusual to accommodate witnesses, Plaintiffs waited until March 24, 2017, to inform USAA of Mr. Kim's travel schedule. Ex. 5, Nienstadt Mar. 24, 2017 email to Berntsen. Moreover, Mr. Kim was on clear notice that he would be called at trial as early as his February 13, 2017 deposition, nearly a month before booking his "travel arrangements." Dkt. 327 at 1; *see also* Dkt. 325-24 at 71:15-72:11; Dkt. 344. Based upon the numerous attempts Plaintiffs made to preclude Mr. Kim from being deposed and the untimeliness of this motion to quash, it can only be inferred that this was a manufactured attempt to preclude his appearance at trial. USAA further notes that it was denied an opportunity at trial to re-direct Mr. Kim.

As the Court recognized, the hallmark of Mr. Nienstadt's deposition strategy was to suppress testimony. *See* Trial Tr. at 529:24-530:5; 941:4-19. In response, USAA moved to preclude Plaintiffs from introducing testimony on subject matter that they precluded the witnesses from testifying to during deposition. *See* Dkt. 323 at 4. Both the Court and Plaintiffs agreed that any introduction of such testimony would be improper. *See* Dkt. 355 at 9-10; Trial Tr. at 6:24-5; 518:17-520:3. Nevertheless, though, Plaintiffs' counsel ignored what is proper and tried to introduce precluded testimony once it had become advantageous to their trial defense. *See* Trial Tr. at 518:17-521:5 (striking questions and admonishing Plaintiffs' counsel for "say[ing] we are not going to give any information concerning it, and then . . . [trying] to put it in backwards".).

Plaintiffs' counsel's "whatever it takes" mentality extended to the witnesses—all represented by Plaintiffs' contingency fee counsel—as they changed their testimony repeatedly or arrived at "new memories" between their deposition and trial. *See, e.g.*, Trial Tr. at 136:12-140:3; 379:19-380:2; 389:17-394:2. Plaintiffs' counsel also attempted to introduce largely improper expert testimony. At the outset, the Court granted USAA's motion to preclude Plaintiffs' experts from testifying as to the intent of the parties—an evidentiary concept with such extensive precedence that it should not have warranted such efforts. *See* Dkt. 323 § I; Trial Tr. at 5:18-6:4. Moreover, the Court found that the remaining testimony which Plaintiffs did introduce through Mr. Dickinson was "untruthful." Trial Tr. at 1033:24-1034:14.

**F. <u>Mr. Nienstadt's Conduct Warrants Sanctions to Deter Similar Conduct</u>**

While Plaintiffs' counsel collectively has shown exceptional behavior throughout this litigation, Mr. Nienstadt's conduct as lead counsel warrants explicit sanctions to deter such conduct in the future. "[A]n 'exceptional' case is simply one that stands out from others with respect to . . . the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S.

Ct. at 1756. That Mr. Nienstadt was "intertwined with [Plaintiffs] to a degree that [the Court has] never seen in over 60 years of practice" alone warrants an exceptionality finding. Trial Tr. at 414:5-9.

Mr. Nienstadt's exceptional conduct became obvious when he involved himself in the facts of this case through his improper alteration of the priority claims in a patent application related to the '432 Patent. Dkt. 200 ¶¶ 86-100.[6] Mr. Nienstadt furthered his involvement when he provided Plaintiffs a draft certificate of correction so that they could "*pro se*" alter the '432 Patent's priority claims in a manner that mirrored his changes in the related application. *See* Trial Tr. at 288:20-289:16. While Plaintiffs and Mr. Nienstadt tried to suppress his involvement in this supposedly-*pro se* filing, USAA ultimately learned of his involvement ***only after*** the Court compelled Plaintiffs to respond to USAA's discovery requests and ordered that Mr. Nienstadt sit for deposition.

Mr. Nienstadt continued to suppress any information regarding his involvement of this litigation during his compelled deposition. It was not until trial that USAA finally learned that Mr. Nienstadt held a direct financial stake in the outcome of the litigation. *See* Trial Tr. at 413:8-10, 607:4-7. This direct financial stake, and Mr. Nienstadt's attempts to hide it, explain why he took such exceptional measures during this litigation—"the ends justif[ied] the means." Trial Tr. at 940:2-23.

These attempts to suppress relevant information was not limited to hiding his own involvement in the facts. Mr. Nienstadt represented ***every*** fact witness that was deposed, and did

---

[6] Even after Mr. Nienstadt was readily aware of USAA's concerns that he was improperly altering the factual record of the '432 Patent, he still moved this Court to allow him to represent Plaintiffs in the '432 Patent's parallel CBMR proceedings. The Court denied his motion, specifically noting that "it always true that a prosecution bar prevents counsel familiar with the issues from appearing in related proceedings. That is the point." Dkt. 161 at 5.

so in a manner that this Court has never seen in the thousand or more cases it has presided upon. *See* Trial Tr. 530:6-10. As the Court noted, Mr. Nienstadt probably should not have continued to represent Plaintiffs through trial. *See* Trial Tr. at 294:21-25. *The only reason that USAA did not move to disqualify Mr. Nienstadt is because allowing him to continue was the best, indeed the only, way for this Court to learn firsthand the extent to which counsel improperly injected himself into this case from the moment he entered an appearance.* Mr. Nienstadt's conduct plainly prejudiced USAA's ability to develop its legitimate allegations of inequitable conduct. *See* Trial Tr. at 987:6-8.

Nearly all of the discovery misconduct described herein was at the sole discretion of Mr. Nienstadt. At numerous points, Mr. Nienstadt revealed his covetous control of this litigation, chastising USAA's counsel for merely contacting other Mei & Mark attorneys of record. *See generally* Ex. 6, Nienstadt Oct. 6, 2016 email to Berntsen (characterizing USAA's voicemails to Plaintiffs' ***attorneys-of-record*** as "telephone harassment of members of Mei & Mark LLP who are not assigned to this issue"). Moreover, Mr. Nienstadt was the only attorney from Mei & Mark present at each fact witness deposition (excluding his own). Mr. Nienstadt sought a direct financial gain from the outcome of this litigation and made all efforts to exercise complete control so as to suppress discovery as he saw fit.

Mr. Nienstadt also demonstrated extreme disrespect for USAA's counsel merely because USAA sought the discovery to which it was entitled. Oftentimes USAA's legitimate requests were met with condescending responses meant to "enlighten" USAA as to his (incorrect) interpretation of the rules of discovery. *E.g.*, Ex. 7, Nienstadt Jan. 26, 2016 email to Berntsen ("I encourage you to focus on the merits of the proceeding rather than apparently unethically continuing to 'milk' your client for billable hours based on frivolous legal arguments that amount

to nothing more than petty harassment of the other party.”). Moreover, Mr. Nienstadt engaged in retaliatory discovery practices by submitting discovery requests personally aimed at USAA’s counsel, Mr. Berntsen. USAA was forced to move for a protective order that was resolved without decision when Mr. Nienstadt pulled these discovery requests after the close of briefing. *See* Dkt. 121 (USAA Reply); Dkt. 130, 131 (Notice of Mootness and Response).[7]

Throughout this litigation, USAA has been forced to deal with conduct the Court ultimately concluded was “terrible.” *See* Trial Tr. at 530:12-17. Sanctions are appropriate under 35 U.S.C. § 285, 28 U.S.C. § 1927, the Federal Rules of Civil Procedure, and the Court’s inherent power in order to deter such conduct in the future.

### G. Plaintiffs’ Exceptional Conduct Continues Post-Trial

On Saturday, May 6, 2017 Plaintiffs filed a petition for a writ of mandamus to the Court of Appeals for the Fourth Circuit, renewing their mid-trial bid that the Court recuse itself. Ex. 8.[8] Plaintiffs’ petition calls the Court biased, bigoted, and senile. *Id.* at 7, 8, 15, 20-22, 28-29. There is no mistaking Plaintiffs’ gambit. They do not want someone who witnessed this trial deciding the attorneys’ fees issue. In the same breath, however, Plaintiffs no doubt will defend the Court’s finding that there was insufficient evidence of intent to deceive.

---

[7] Plaintiffs argued that it was unethical for USAA’s counsel to issue a subpoena with the identifier “Esq.” after the issuing attorney’s name because he was not admitted to practice in the jurisdiction the subpoena was issued—an incredible display of irony considering Plaintiffs’ counsel’s conduct throughout this litigation and at trial. *See* Dkt. 118 at 5.

[8] Plaintiffs’ conduct is so exceptional that it has become perfectly predictable. Over three months ago USAA advised the Court that should USAA obtain favorable rulings at a pure bench trial “Plaintiffs will bury this Court and the Federal Circuit with voluminous briefing premised on an imaginary smear campaign by USAA and imaginary partiality by the Court.” Dkt. 274 at 3.

## IV. SANCTIONS ARE APPROPRIATE HERE

USAA is the prevailing party in this lawsuit, despite the fact that the Court granted Plaintiffs' Rule 52(c) motion on one of USAA's defenses. "Determination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation, and not on a count of the number of claims and defenses." *Brooks Furniture Mfg., Inc. Dutailier Intern., Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (abrogated on other grounds by *Octane Fitness*, 134 S. Ct. at 1752-58). "A party does not need to prevail on all claims to qualify as the prevailing party." *SSL Servs., LLC v. Citrix Sys.*, Inc., 769 F.3d 1073, 1086 (Fed. Cir. 2014).

This litigation began with Plaintiffs' baseless allegations that USAA was infringing their patent, and Plaintiffs continued to make such assertions of infringement at trial, ***even after the patent had been invalidated.*** *See* Trial Tr. at 715:21-717:11. Every counterclaim alleged by USAA was related directly to its defense against those allegations. Thus, whether USAA succeeded on any or all of its counterclaims, including its claim of inequitable conduct, is irrelevant. Plaintiffs' overall objective was a finding that USAA infringed their patent and USAA's overall objective was defending against these allegations. Plaintiffs leave with an invalidated patent, a contumacious lawyer, an unethical lawyer, and multiple discredited witnesses (including their expert), while USAA leaves a non-infringer and the prevailing party.

### A. <u>This Case is Exceptional Under 35 U.S.C. § 285</u>

Sanctions are appropriate in exceptional cases, which are those "that stand[] out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. Here, this standard is readily satisfied, as the Court has already found that "[t]his case is the most unusual thing [that it has] ever seen." Trial Tr. at 832:4.

As explained in its original brief, USAA is entitled to its fees incurred from the filing of this lawsuit through its successful invalidation of Plaintiffs' patent. *See* Dkt. 140. USAA does not dispute that since that invalidation, it has pursued its claim against Plaintiffs of inequitable conduct. *See* Dkt. 154. However, Plaintiffs' and their counsel's conduct throughout this litigation, and specifically ***since*** the '432 Patent was invalidated, warrants USAA recovering its reasonable fees and costs through trial.

Litigation is an inherently adversarial process, but when one side takes this concept beyond what is acceptable under any measurement, fees are warranted. Throughout trial, Mr. Nienstadt's conduct was described as "trying to stifle [witnesses]," "sufficient enough evidence to pose a conspiracy," "terrible," "[sufficient to] prohibit[] him from participating as counsel," and something the Court "has never seen in over 60 years of [] practice." Trial Tr. at 414:5-9, 529:22-530:17. But this trial conduct was just the tip of the iceberg that was an extension of Mr. Nienstadt's pretrial conduct, which continually forced USAA into unnecessary motion practice to obtain discovery it should have gotten without dispute. *See* Dkts. 78, 192, 212, 220, 226, 245, 267, 293, 303.

Similarly, Mr. Nienstadt continually ignored the governing law and facts of the case, necessitating rehashed argument, motions and oppositions from USAA. Even after Plaintiffs' Motion to Dismiss, Motion for Reconsideration, and Motion for Summary Judgment all were denied, Mr. Nienstadt's refusal to acknowledge the law of the case continued at trial when testifying that he still believed USAA's claim was frivolous. *See* Trial Tr. at 575:6-20, 577:24-578:18; 586:6-9; 590:17-21. Even Plaintiffs' discredited patent law expert, Mr. Dickinson, backed away at trial from his expert report statement that USAA's inequitable conduct claim was

objectively baseless. *See* Trial Tr. at 879:7-11 ("[T]he words I used may have been a little too strong").

This unreasonable refusal to accept the law of the case, combined with Mr. Nienstadt's attempts to stifle all discovery in a manner "designed, purely and simply, to prevent the disclosure of evidence which they felt obviously would be detrimental to the particular case" renders this case exceptional through trial—a fact this Court has already acknowledged. *See* Trial Tr. at 940:2-941:19 ("If it hadn't been for [Plaintiffs' counsel's conduct], we probably wouldn't even be trying this case.").

Other district courts have awarded fees under Section 285 in the face of litigation misconduct. Section II.A, *supra* (collecting cases). Indeed, the Federal Circuit has vacated the denial of attorneys' fees where the district court found harassing, unprofessional, and vexatious litigation misconduct. *Oplus Techs.*, 782 F.3d at 1375-76.

Due to the exceptional nature of this case, USAA requests that the Court award it its fees under Section 285 for the entirety of this litigation, including trial.

**B. Mr. Nienstadt Unreasonably and Vexatiously Multiplied the Proceedings Within the Meaning of 28 U.S.C. § 1927**

Plaintiffs' obstructionist discovery practices served only to drive up costs and delay USAA's access to critical discovery. Plaintiffs attempted on at least *nine* separate occasions to prevent Mr. Nienstadt from testifying both at deposition and trial after he knowingly involved himself in the facts of the case. *See* Dkts. 58, 66, 72, 104, 204, 212, 226, 311; Trial Tr. at 593:22-597:25; *see also* Dkt. 305. Plaintiffs and their counsel unreasonably multiplied the proceedings by forcing USAA to brief—and the Court to resolve—these issues. Plaintiffs and their counsel should bear the financial burden of those actions.

USAA requests that the Court award it its fees related to the unnecessary discovery and other motion practice resulting from Mr. Nienstadt's multiplication of the proceedings, as well as trial, under Section 1927. *See* Dkts. 58, 66, 72, 78, 102, 104, 120, 192, 204, 212, 220, 226, 229, 245, 267, 293, 303, 305, 309, 311, 318, 326.

### C. Sanctions Are Appropriate for Plaintiffs' and Their Counsel's Failure to Comply with the Federal Rules of Civil Procedure

"Determining whether discovery sanctions are appropriate requires a three-step analysis of (1) whether a party violated a discovery order or Federal Rule of Civil Procedure; (2) whether the violation was 'harmless' or 'substantially justified;' and (3) which sanction is appropriate for the violation." *Vir2us*, 2017 WL 385044 at *4.

Here, the Court already has found Mr. Nienstadt's deposition conduct was "designed, purely and simply, to prevent the disclosure of evidence which they felt obviously would be detrimental to the particular case." Trial Tr. at 941:4-9. There is no longer any dispute that these repeated violations of the Rules were not substantially justified. Nor can there be a dispute that Plaintiffs' discovery violations resulted in harm to USAA, who was prevented from asking third party witnesses about their correspondence—including Dr. Tadayon's malpractice release—related to Mr. Kim's petitions for certificate of correction. Indeed, Mr. Nienstadt clearly indicated that Plaintiffs had no intention of admitting that Plaintiffs had lost years' worth of email. Ex. 2, Jan. 17, 2017 Resp. to Interrog. No. 15 ("To the knowledge of Plaintiffs' counsel, the information above [regarding email loss] is not responsive to any of USAA's previous discovery requests."). Mr. Nienstadt flouted the Federal Rules of Civil Procedure, and "deterrence requires that the Court leave [the nondisclosing party] worse off than it would have been if it had disclosed properly." *Vir2us*, 2017 WL 385044 at *9 (*quoting Samsung Elecs.*, 314 F.R.D. at 205. As sanctions for these violations, the Court may award costs, FED. R. CIV. P. 37,

which is "generally less drastic than those [remedies] available before or during trial." *Vir2us*, 2017 WL 385044 at *9.

**D. Sanctions against Mr. Nienstadt Are Appropriate for Violating the Virginia State Bar Rules of Professional Conduct**

As the Court already found, Mr. Nienstadt's solicitation and representation of every fact witness ultimately testifying at trial violated numerous provisions in the Virginia State Bar Rules of Professional Conduct. For example, Mr. Nienstadt's initial attempts to represent parties such as Ms. Cao and Mr. Fortkort violated Rule 4.3(b) which states, "A lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interest of the client." Va. Rule of Professional Conduct 4.3(b). There existed obvious conflicts of interest between the practitioners that helped prosecute Plaintiffs' patents and Plaintiffs' interests. Indeed, with respect to the malpractice release that Plaintiffs gave to Bijan Tadayon, the Court noted at trial that this case may "be the first time in history that an individual would claim that he was the attorney for an individual who was worried about that attorney's client suing him." Trial Tr. at 1038:10-13.

Plaintiffs' sole interest in this case was the preservation of their patent rights. As emphasized by Plaintiffs' counsel, Ms. Cao's and Mr. Fortkort's only interests in this litigation was the preservation of their professional livelihood. *See, e.g.*, Trial Tr. at 61:18-23, 66:1-4, 69:21-24. Thus, prior to Mr. Nienstadt's representation, there existed the likely possibility that their truthful testimony could have led to the unenforceability of Plaintiffs' patent. Instead, Mr. Nienstadt took incredible lengths to silence (or conform) these witnesses, at the risk of their credibility before the USPTO and this Court, in order to preserve Plaintiffs' patent rights.

Mr. Nienstadt's representation of at least Mr. Fortkort also violated his duties under Rule 7.1 precluding a lawyer from making false or misleading communications about the lawyer's services when soliciting a client. "A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact when omission of such fact makes the statement materially false or misleading as a whole." *Id.* at Rule 7.1(a). Mr. Nienstadt's claims that his limited representation of Mr. Fortkort was a charitable act to shield him from unnecessary costs is undermined by the record. *See* Trial Tr. at 577:24-578:10. Indeed, Mr. Fortkort admitted at trial that he never discussed being accused of committing inequitable conduct with Mr. Nienstadt. *See* Trial Tr. at 475:25-476:7 ("we never had a discussion that I was being accused of inequitable conduct at the time"). Mr. Fortkort also stated during his deposition, "I didn't realize I was being accused [of inequitable conduct] in this case either." Dkt. 325-20, Fortkort Dep. at 162:21-163:3. Between his deposition and trial, which included further efforts to suppress Mr. Fortkort's testimony, Mr. Nienstadt apparently never corrected Mr. Fortkort's misunderstanding, which persisted until he testified at trial.[9]

Finally, Mr. Nienstadt violated Rule 3.7, which states in relevant part: "A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness . . . ." Va. Rule of Professional Conduct 3.7(a). The Court noted at the outset of trial that it was "a little surprised that Mr. Nienstadt, understanding his involvement in this case, would be the attorney, but that's his choice." Trial Tr. at 5:14-17. Indeed, USAA warned Mr. Nienstadt in

[9] Even if Mr. Nienstadt did not purport to represent Mr. Fortkort with respect to the inequitable conduct allegations, the Rules require that when a "lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding." Va. Rule of Professional Conduct 4.3(a). Considering Mr. Fortkort's clear misunderstanding of the allegations and Plaintiffs' counsel's own recognition of the gravity of these allegations, Mr. Nienstadt was obligated to correct his misunderstanding.

the early days of this litigation that he was likely to be a necessary witness. Ex. 9, Zoppo Jan. 14, 2016 email to Nienstadt ("Virginia State Bar Rule 3.7 . . . prohibits lawyers from acting as an advocate in a case where the lawyer is likely to be a necessary witness. . . . We raise these issues now so that the Asgharis can avoid a situation where counsel becomes entrenched in representation only to find itself unable to proceed.").

Mr. Nienstadt was undeterred and must now bear the consequences of his actions. USAA requests that the Court sanction Mr. Nienstadt as it finds appropriate to deter similar behavior in the future.

**E. Sanctions Are Appropriate Under the Court's Inherent Authority**

The Supreme Court has "long recognized that attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *F. D. Rich Co. v. U. S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 129 (1974). Here, USAA is the prevailing party and the Court has found that Mr. Nienstadt's discovery conduct was unethical. *See* Trial Tr. at 1010:6-21. Moreover, Plaintiffs' obstructionist discovery practices served only to drive up costs and delay USAA's access to critical discovery, often until well after it had taken the depositions of the relevant third parties. The Court should not countenance such bad faith litigation conduct. USAA has detailed Plaintiffs' frivolous litigation positions and improper litigation conduct above, and will not repeat them here. Due to Plaintiffs' conduct, USAA requests that the Court award it its fees under the Court's inherent power for the entirety of this litigation, including trial.

**F. Mr. Nienstadt's Inexperience as a Trial Lawyer is No Excuse**

During the trial, the Court found that Mr. Nienstadt is not an experienced trial lawyer. *See* Trial Tr. at 1037:22-24. While Mr. Nienstadt may lack *trial* experience, the majority of his practice over at least the last seven years has comprised litigation. *See* Dkt. 325-30, Nienstadt

Dep. at 19:21-20:8; *see also* Ex. 1, Nienstadt Firm Bio. Mr. Nienstadt also has been admitted to practice before the USPTO since 2002. Ex. 10, Nienstadt PTO Admission Data.

Moreover, Mr. Nienstadt is not a solo practitioner, but rather part of a law firm that entered appearances of six attorneys for Plaintiffs in this action. *See* Dkts. 23 (Nienstadt), 24 (Colantoni), 56 (Sandell), 57 (Mei), 91 (Chen), 191 (Pearson). In particular, named partner Mr. Lei Mei claims to "focus[] his practice on patent litigation and complex commercial litigation." Ex. 11, Mei Firm Bio. Further, Plaintiffs' other trial counsel, Mr. Jeff Pearson, is an experienced litigator who cut his teeth in the courtroom as a Judge Advocate General. Ex. 12, Pearson LinkedIn Profile; Ex. 13, Pearson Firm Bio. If Mr. Nienstadt's inexperience left him in doubt, he was more than capable of conferring with his more experienced colleagues—just as he repeatedly suggested USAA's counsel do when it disagreed with Mr. Nienstadt's unreasonable litigation positions. Ex. 14, Nienstadt Mar. 16, 2016 email to Zoppo ("Once again, you can easily walk down the hall at Fish & Richardson and ask another attorney . . . ."). Of note, USAA directed its correspondence in this case to *all* of Plaintiffs' counsel-of-record.

The litigation behavior of Plaintiffs' attorneys, and in particular Mr. Nienstadt, unnecessarily and unfairly inflated USAA's litigation expenses. That Mr. Nienstadt may not have seen many trials does not change this fact. Sanctions are still appropriate.

## V. PLAINTIFFS AND THEIR COUNSEL SHOULD BE ORDERED TO PAY USAA'S FEES JOINTLY AND SEVERALLY

That Mr. Nienstadt exceeded the boundaries of ethical conduct in the Commonwealth of Virginia (*see* Trial Tr. at 602:3-603:8), counsels for an exemplary fees award from him in a personal capacity. 28 U.S.C. § 1927. His firm Mei & Mark's failure to reign him in counsels for an award of attorneys' fees against the firm. *See* 28 U.S.C. § 1927; 35 U.S.C. § 285.

USAA may recover its fees from Plaintiffs' counsel (both the individuals and Plaintiffs' law firm, Mei & Mark) should the Court determine that sanctions are warranted under either 28 U.S.C. § 1927 or the Court's inherent power. The Court may also award USAA its attorneys' fees from both Plaintiffs and their counsel under the Patent Act, which is silent as to *who* must satisfy a fees award. 35 U.S.C. § 285.

While USAA was denied discovery into Plaintiffs' financial situation, *see* Dkt. 294 § A, it has reason to believe that they have business and other holdings that could satisfy a fees award, at least in part. Dkt. 152-6, Delphinus SEC Form D (reflecting $2,500,000 capitalization). While Plaintiffs appear to have the wherewithal to satisfy USAA's attorneys' fees, it was Plaintiffs' attorneys at Mei & Mark LLP who supposedly evaluated the legal sufficiency of Plaintiffs' case and engaged in the unprofessional conduct detailed above that resulted in a ballooning of this case and USAA's legal fees. Mr. Nienstadt and Mei & Mark should share in the consequences of their actions (or failure to prevent Mr. Nienstadt's actions). *See* 28 U.S.C. § 1927.

Plaintiffs and their attorneys should be held jointly and severally liable for USAA's attorneys' fees because it is consistent with the deterrent objectives of 35 U.S.C. § 285. *Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 965 (N.D. Cal. 2015) ("[A] sanction holding [the law firm] jointly and severally liable, with Segan, for $100,000 worth of Zynga's section 285 fee award is equitable and adequately serves the deterrent purpose of Rule 11."); *Kaehni v. S. S. Kresge Co.*, No. 69-C-573, 1974 U.S. Dist. LEXIS 8485, *7-8 (D. Md. 1974) ("The Court further finds that the attorney [], in admittedly recommending that this suit be brought against S. S. Kresge Company, knowing fully well that no accused device was known to plaintiffs, is jointly and severally responsible."); *Advance Transformer Co. v. Levinson*, No. 79-C-557, 1986 U.S. Dist. LEXIS 16021, *7-8 (N.D. Ill. Dec. 23, 1986) (assessing § 285 fees jointly and

severally against counsel); *see also Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307, 315-316 (D. Del. 2000) (reserving decision on § 285 and noting that "[a]fter reviewing the Federal Circuit precedent on this issue, there appears to be authority for assessing fees against the attorneys themselves instead of simply their clients, which might be warranted in this case given the circumstances."); *see also Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1253 (Fed. Cir. 2003) (Newman, J., dissenting but observing that precedent allows the assessment of § 285 attorneys' fees against counsel in cases of "egregious conduct").

## VI. CONCLUSION

For at least the foregoing reasons, the Court should order Plaintiffs and their attorneys, jointly and severally, to pay USAA's attorneys' fees up to and including trial and for this fees motion. USAA further requests that the Court formally sanction Mr. Nienstadt for his unethical conduct in this litigation.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated: May 8, 2017

By: *\/s/ Ahmed J. Davis*

Ahmed J. Davis (Va. Bar # 43982)
adavis@fr.com
**FISH & RICHARDSON P.C.**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Phone: (202) 783-5070
Fax: (202) 783-2331

Michael T. Zoppo (*Pro hac vice*)
zoppo@fr.com
**FISH & RICHARDSON, P.C.**
601 Lexington Avenue, 52nd Floor
New York, New York 10022
Tel. (212) 765-5070
Fax (212) 258-2291

Matthew C. Berntsen (*Pro hac vice*)
berntsen@fr.com
David Kuznick (*Pro hac vice*)
kuznick@fr.com
Grant Rice (*Pro hac vice*)
rice@fr.com
**FISH & RICHARDSON, P.C.**
One Marina Park Drive
Boston, MA 02210-1878
Tel. 617-542-5070
Fax (617) 542-8906

Counsel for Defendant
UNITED SERVICES AUTOMOBILE ASSOCIATION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been filed with the Court's ECF systems, and thereby served all parties and counsel designated to receive such notices, on May 8, 2017.

*/s/ Ahmed J. Davis*

Ahmed J. Davis (Va. Bar # 43982)
adavis@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, N.W., Suite 1100
Washington, DC 20005
Phone: (202) 783-5070
Fax: (202) 783-2331